IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MARIA CARDENAS,

        Plaintiff,

   v.

TWIN CITY FIRE INSURANCE
COMPANY,

        Defendant.

13 C 8236

Judge Virginia M. Kendall

# MEMORANDUM OPINION AND ORDER

Maria Cardenas filed a complaint against Twin City Fire Insurance Company to enforce a settlement agreement between Cardenas and her former attorney, John Ambrose, and his firm, Ambrose &Associates, P.C., following a legal malpractice suit. Twin City was Ambrose's legal malpractice insurer. In 2008, Ambrose had unsuccessfully represented Cardenas in a civil rights suit against the City of Chicago and a Chicago Police Officer. Judge Norgle dismissed the suit after Ambrose failed to serve the police officer within the 120-day period that Fed. R. Civ. P. 4(m) provides. *See Cardenas v. City of Chi.*, No. 08 C 3174, 2010 WL 610621 (N.D. Ill. Feb. 15, 2010). Cardenas sued Ambrose on February 15, 2012 in the Circuit Court of Cook County, Illinois, alleging legal malpractice. On February 20, 2012, Ambrose notified Twin City of the pending malpractice action against him, but Twin City refused to defend or indemnify him or his firm. In a letter to Ambrose justifying its position, Twin City cited violations of the insurance policy's notice provisions and a policy exclusion. Without assistance or advice from Twin City, Ambrose and his firm negotiated a $750,000 settlement with Cardenas, which assigned all of his rights to the insurance policy to Cardenas and provided that Cardenas could seek to enforce the

agreement only against Twin City; not against Ambrose or his firm. Cardenas now asks the Court to enforce that settlement agreement against Twin City.

Twin City moved for summary judgment alleging that it owed no duty to defend or indemnify Ambrose because the claim he submitted fit into a policy exclusion.[1] (Dkt. No. 14). Cardenas cross-moved for summary judgment alleging that Twin City was estopped from asserting policy defenses based on its failure to defend Ambrose, and that the settlement agreement between her and Ambrose was valid and enforceable against Twin City. (Dkt. No. 24).

For the reasons set forth below, Twin City's motion for summary judgment is granted because the claim that Ambrose submitted fit into a coverage exclusion. Cardenas's motion for summary judgment is therefore denied. Twin City's motion to stay ruling on a money judgment (Dkt. No. 30) is therefore dismissed as moot.

## **FACTS**

The following facts are undisputed unless otherwise noted.

### A. **The Malpractice Insurance**

Twin City provided four consecutive, twelve month malpractice insurance policies to Ambrose and his firm, Ambrose & Associates, P.C., between August 29, 2008 and August 29, 2012. (Def. 56.1 St. ¶ 18; Pl. 56.1 St. ¶ 1). Among other things, the policies provided for indemnification and defense against charges of professional negligence. (Def. 56.1 St. ¶ 19; Pl. 56.1 St. ¶ 5). The policies also contained a requirement that Ambrose notify Twin City when he first became aware of events that had the potential to lead to a claim against him. In the words of the policy: "You [Ambrose] . . . must see to it that we [Twin City] are notified immediately . . .

---

[1] Twin City also attacked the enforceability of the settlement agreement and the validity of Ambrose's assignment of the policy to Cardenas, but these arguments are relevant only it had a duty to defend or indemnify Ambrose.

of any circumstance which may give rise to a claim." (Def. 56.1 St. ¶ 19; Pl. Resp. 56.1 St. ¶ 19). The benefit to Ambrose of such notification was that reported claims would be "considered to have been made and reported during the policy period." (*Id.*) In other words, Twin City would defend Ambrose and indemnify him for any resulting covered liability. Another provision of the policies, which the parties have called the Prior Knowledge Exclusion, gave the notice requirement teeth. That section provided that the insurance did not cover claims arising out of acts or omissions occurring before the inception date of the policy, August 29 of each year, if the insured "knew or could have reasonably foreseen" that the acts "might be expected to be the basis of a claim." (*Id.*). Claims that were the result of circumstances that occurred before the inception date of the plan were not covered, unless Ambrose had timely notified Twin City of the facts that gave rise to the claim. Even then, those claims would be covered under the policy under which notice was made, not the policy in effect at the time of the claim.

### B. The Underlying Civil Rights Lawsuit

In April 2008, Ambrose represented Plaintiff, Maria Cardenas, in a civil rights lawsuit against the City of Chicago and a Chicago Police officer alleging violation of her civil rights under 42 U.S.C. § 1983 during the execution of a search warrant at her home. (Pl. 56.1 St. ¶ 9; Def. 56.1 Resp. ¶ 9). Ambrose properly served the City of Chicago, and the City removed the case to federal court on June 2, 2008. (*Id.*) The 120-day period during which to serve additional defendants began running that day. *See* Fed. R. Civ. P. 4(m).

The district court's order dismissing the civil rights lawsuit sheds more light on the events that followed than do the parties' submissions in this case. *See Cardenas v. City of Chicago*, No. 08 C 3174, 2010 WL 610621 (N.D. Ill. Feb. 15, 2010); *see also* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in

the record."). Ambrose first attempted to serve the officer at Chicago Police Headquarters, but delivered the summons and complaint to the wrong office. 2010 WL 610621 at *1. Ambrose had attempted to deliver the complaint to the Superintendent's office, which refused to accept service on the officer's behalf. *Id.* Ambrose represented to the court that he then called the Chicago Police Department to inquire about how to serve an officer, and was told that the proper place to serve officers was at Chicago Police Headquarters. He did not attempt to follow these instruction, perhaps because the Superintendent's office – located at Chicago Police Headquarters – had previously rejected service.

Not until November 12, 2008 (after the 120-day service period ended on October 2) did Ambrose do more to determine the proper method of serving the police officer. On that day, he wrote a letter to the City defendants asking them directly to explain the proper way to serve the officer. *Id.* at *2. The City responded on December 17, 2008, informing Ambrose that the proper method of serving a police officer is at Chicago Police Department Headquarters, Office of Legal Affairs. *Id*. Ambrose claimed that the City assured him that service was unimportant, because settlement was likely; the City denied it made such representations. *Id*. On November 9, 2009, Ambrose served the officer at Chicago Police Department Headquarters, Office of Legal Affairs. *Id*. By then, a motion to dismiss for failure to serve was already pending, nearly a year had passed since Ambrose learned the proper mechanics of serving a Chicago Police officer, and over a year had passed since the 120-day service period following removal had expired. *Id*.

On February 15, 2010, the Northern District of Illinois dismissed the case for Ambrose's unjustified failure to timely serve the police officer named in the complaint. (Def. 56.1 ¶ 10; Pl. 56.1 St. ¶ 9). The district court made clear in its order that Ambrose had "only himself to blame" for the dismissal. (Def. 56.1 St. ¶ 11; Pl. Resp. 56.1 St. ¶ 11). The district court denied

4

Ambrose's motion to amend or alter that judgment on September 1, 2010. (Def. 56.1 St. ¶ 12; Pl. 561. Resp. ¶ 12). The Seventh Circuit affirmed the dismissal on July 21, 2011. (Def. 56.1 St. ¶ 14; Pl. 56.1 St. ¶ 9). The Seventh Circuit denied rehearing in that case on September 15, 2011 (Def. 56.1 St. ¶ 16; Pl. 56.1 Resp. ¶ 16). At no point during these proceedings did Ambrose notify Twin City, his malpractice insurer, of any of the events described above. (Def. 56.1 St. ¶ 20; Pl. 56.1 St. ¶ 10).

### C. The Malpractice Lawsuit

On February 15, 2012, Cardenas filed a legal malpractice suit against Ambrose. (Def. 56.1 St. ¶ 5; Pl. 56.1 St. ¶ 10). In that case, Cardenas alleged that Ambrose and his firm negligently failed to serve the police officer in the civil rights suit which constituted a breach of the duty of Care that Ambrose owed to Cardenas. (Def. 56.1 St. ¶ 17; Pl. 56.1 St. ¶ 9). Ambrose notified Twin City of the lawsuit pending against him on February 20, 2012, five days after it was filed. (Def. 56.1 St. ¶ 20; Pl. 56.1 St. ¶ 10). On March 14, 2012, Twin City informed Ambrose that it denied any obligation to defend or indemnify Ambrose for the lawsuit. (Pl. 56.1 St. ¶ 11; Def. Resp. 56.1 ¶ 11). Twin City did not file a declaratory action in order to seek judicial determination of its obligation to defend under the policy. (Pl. 56.1 St. ¶ 17; Def. Resp. 56.1 St. ¶ 17). Twin City did not defend Ambrose or participate in the settlement between Ambrose and Cardenas in any way. (Pl. 56.1 St. ¶ 16; Def. 56.1 Resp. ¶ 16).

After this point, the parties dispute what occurred. Cardenas claims that she subsequently litigated the case against Ambrose. She claims that litigation produced a valid settlement agreement, which assigned all of Ambrose's rights under the Twin City policy to Cardenas, which she now seeks to enforce. (Pl. 56.1 St. ¶¶ 18-21). Twin City objects to the authenticity and enforceability of that agreement, including the characterization of Cardenas as the assignee of

Ambrose's rights. (Def. Resp. 56.1 ¶¶ 18-21). Nevertheless, Twin City moved for summary judgment, arguing that its actions were proper vis-à-vis its obligations to Ambrose, and that it was therefore not liable to Cardenas whether or not the assignment and settlement agreement were proper.

## LEGAL STANDARD

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Thayer v. Chiczewski¸* 705 F.3d 237, 246 (7th Cir. 2012). In order to survive summary judgment, the nonmoving party must set forth facts that show there is a genuine issue of material fact for trial "such that a reasonable jury could return a verdict in her favor." *Cincinnati Life Ins. v. Beyrer*, 722 F.3d 939, 951 (7th Cir. 2013); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). For the purpose of summary judgment, the Court views all facts in the light most favorable to the nonmoving party. *Fitzgerald v. Santoro*, 707 F.3d 725, 730 (7th Cir. 2013). "Evidence supporting or opposing summary judgment must be admissible if offered at trial, except that affidavits, depositions, and other written forms of testimony can substitute for live testimony." *Malin v. Hospira, Inc.*, No. 13-2433, 2014 WL 3896175 at*1 (7th Cir. Aug. 7, 2014). On cross-motions for summary judgment, each movant must satisfy Rule 56's requirements. *See Cont'l Cas. Co. v. Nw. Nat'l Ins. Co.*, 427 F.3d 1038, 1041 (7th Cir. 2005).

## DISCUSSION

The analysis of these cross-motions for summary judgment must proceed in order. The Court must first determine whether Twin City has breached its duty to defend under Illinois law. If Twin City has not breached the duty to defend, then it is likewise not liable on the policy and the Court should grant summary judgment in its favor. *See Amerisure Mut. Ins. Co. v. Microplastics, Inc.*, 622 F.3d 806, 810 (7th Cir. 2010) (the duty to defend is broader than the

duty to indemnify under Illinois law). If it has breached its duty to defend then it is estopped from asserting defenses based on the policies at issue. *See Amer. Safety Cas. Ins. Co. v. City of Waukegan*, 678 F.3d 475, 485 (7th Cir. 2012) (citing *Employers Ins. Co. of Wausa v. Ehlco Liquidating Trust*, 708 N.E.2d 1122, 1135 (Ill. 1999)). Only if the Court finds that Twin City did breach the duty to defend must it consider whether Cardenas is entitled to judgment as a matter of law. For the reasons explained below, the Court finds that Twin City no genuine dispute of material fact exists and Twin City is entitled to judgment as a matter of law.

As an initial matter, the Court applies Illinois substantive law. Neither of the parties contends that the choice of law rules of Illinois require the Court to apply the substantive law of another state. *See Auto–Owners Ins. Co. v. Websolv Computing, Inc.*, 580 F.3d 543, 547 (7th Cir.2009) ("Courts do not worry about conflict of laws unless the parties disagree on which state's law applies.") (internal citation and quotation marks omitted). The Court will "apply the law that [it] believe[s] the Supreme Court of Illinois would apply if the case were before that tribunal rather than before this court." *Help at Home, Inc. v. Med. Capital, L.L.C*., 260 F.3d 748, 753 (7th Cir.2001). Under Illinois law, "the interpretation of an insurance policy is a question of law that is properly decided by way of summary judgment." *Twenhafel v. State Auto Prop. and Cas. Ins. Co.*, 581 F.3d 625, 628 (7th Cir. 2009) (internal quotation marks and citation omitted).

### A. Twin City Had no Duty to Defend Ambrose

Under Illinois law, an insurer's duty to defend is "broader than its duty to indemnify, but it is not unlimited." *Amerisure Mut. Ins. Co. v. Microplastics, Inc.*, 622 F.3d 806, 810 (7th Cir. 2010) (citing *Amer. Family Mut. Ins. Co. v. W.H. McNaughton Builders, Inc.*, 843 N.E.2d 492, 497 (Ill. App. 2006)). In order to determine the scope of the duty to defend, courts compare the "factual allegations of the underlying complaint [. . .] to the language of the insurance policy. *Id.*

7

(citing *General Agents Ins. Co. of America, Inc. v. Midwest Sporting Goods*, 828 N.E.2d 1092, 1098 (Ill. 2005)). "If the facts alleged in the underlying complaint fall within, or potentially within, the policy's coverage, the insurer's duty to defend arises." *Santa's Best Craft, LLC v. St. Paul Fire and Marine Ins. Co.*, 611 F.3d 339, 346 (7th Cir. 2010). Illinois law permits an insurer to refuse to defend "only if it is clear from the face of the underlying complaint that the allegations set forth in the complaint fail to state facts that bring the case within, or potentially within, the coverage of the policy." *Health Care Indus. Liab. Ins. Program v. Momence Meadows Nursing Ctr., Inc.*, 566 F.3d 689, 694 (7th Cir. 2009) (quoting *Valley Forge Ins. Co. v. Swiderski Elecs., Inc.*, 860 N.E.2d 307, 315 (Ill. 2006) (internal quotation marks omitted). If an exclusion to the policy is to relieve the insurer of the obligation to defend, it must be unmistakably clear that the exclusion applies. *See Santa's Best Crafts, LLC v. St. Paul Fire & Marine Ins. Co.*, 611 F.3d 339, 348 (7th Cir. 2010) (citing *St. Paul Fire & Marine Ins. Co. v. Antel Corp.*, 899 N.E.2d 1167, 1176 (Ill. App. 2008) ("Where, as here, an insurer relies on an exclusionary provision, it must be clear and free from doubt that the exclusion prevents coverage."). Any doubt or ambiguity is resolved in favor of the insured. *National Cas. Co. v. McFatridge*, 604 F.3d 335, 338 (7th Cir. 2010).

Twin City owed Ambrose no duty to defend because the Prior Knowledge Exclusion brought the claim outside the policy's coverage. The Prior Knowledge Exclusion provided that the insurance did not cover claims arising out of acts or omissions occurring before the inception date of the policy, August 29, 2011 in the case of the policy under which Ambrose made his claim, if Ambrose "knew or could have reasonably foreseen" that the "negligent acts, errors, or omissions" occurring before that date "might be expected to be the basis of a claim." (Def. 56.1 St. ¶ 19; Pl. Resp. 56.1 St. ¶ 19). . Twin City, as insurer, bears the burden of proving that an

exclusion applies. *See Santa's Best Crafts, LLC*, 611 F.3d at347 (citing *Ins. Corp. of Hanover v. Shelborne Assocs.*, 905 N.E.2d 976, 982 (Ill. App. 2009). Twin City's position is that because Ambrose was aware of the 2010 district and 2011 appellate court opinions blaming him for dismissal of the civil rights suit, the Prior Knowledge Exclusion brought Cardenas's allegations against Ambrose so clearly outside the scope of the policy that no duty to defend arose. In support of its argument, Twin City offers the content of the 2010 district and 2011 appellate court opinions dismissing the Cardenas case. Cardenas reads the policy strictly, arguing that it was not clear and free from doubt that Ambrose's failure to serve was both negligent, as required by the text of the Prior Knowledge Exclusion, and that Ambrose did not know and could not reasonably expect that his failure to serve would have be the basis of a malpractice claim. Even accepting Cardenas's strict construction of the contract, the Court finds that the Prior Knowledge Exclusion applies.

An attorney is negligent when he or she "fails to exercise a reasonable degree of care and skill" in representing a client. *Nelson v. Quarles and Brady, LLP*, 997 N.E.2d 872, 881 (Ill. App. 2013) (quoting *Smiley v. Manchester Ins. & Indemnity Co.*, 375 N.E.2d 118 (Ill. 1978)). Whether the attorney has not met that standard is a question of fact. *See Nelson*, 997 N.E.2d at 880 (collecting cases). The substantive requirements of that standard vary with the act in question, and it is not always easy to determine whether a certain set of facts meets the standard. For this reason, a party seeking to prove attorney malpractice must generally introduce expert testimony in order to establish the relevant standard of care. *See Ball v. Kotter*, 723 F.3d 813, 822 (7th 2013) (citing *Barth v. Reagan*, 564 N.E.2d 1196, 1200 (Ill. 1990)). Relevant for present purposes, an exception to the rule requiring expert testimony applies when "an attorney's negligence is so grossly apparent that a lay person would have no difficulty in appraising it."

9

*Barth* 564 N.E.2d at 1200. The prototypical application of this so-called "common knowledge exception" is when "the attorney's alleged negligent act involved a failure to meet a widely recognized time deadline." *Id*. at 1201. Illinois courts have applied this exception to the failure to obtain service of process within the limitations period. *See Gray v. Hallett*, 525 N.E.2d 89, 91 (Ill. App. 1988). The standard of care is clear: an attorney must meet widely recognized time deadlines, and is negligent if he or she does not. Rule 4(m) creates a 120-day period during which service of process can occur following removal. Ambrose neither served the police officer during that period, nor offered a satisfactory excuse for not doing so. No reasonable factfinder could conclude that Ambrose did not breach the relevant standard of care. To the extent that the Prior Knowledge Exclusion required the triggering conduct to be legally negligent, the Court finds that Ambrose's failure to serve the police officer satisfies that requirement.

Ambrose likewise could have expected that the failure to serve the police officer was likely to serve as the basis for a malpractice claim. The language of the contract excludes from coverage both actions that Ambrose subjectively knew could form the basis of a claim, and those that might be expected to form the basis of a claim. Whether or not Ambrose held a subjective belief that a malpractice lawsuit would not result is irrelevant; the second clause of the Prior Knowledge Exclusion requires the Court to apply an objective standard in determining whether the exclusion applies. *See Smith v. Neumann*, 682 N.E.2d 1245, 1254 (Ill. App. 1997) (interpreting exclusion to coverage when ensured had "basis to believe" that prior conduct could result in a claim as requiring an objective analysis); *see also, e.g.*, *Minn. Lawyers Mut. Ins. Co. v. Larson*, No. 06 C 74, 2007 WL 2688443 at *8 (S.D. Ill. Sep. 11, 2007) (interpreting Illinois law as allowing the contract terms to dictate whether the knowledge requirement was objective or subjective); *accord Koransky, Bouwer & Poracky, P.C. v. Bar Plan Mut. Ins. Co.*, 712 F.3d 336,

343 (7th Cir. 2013) (Indiana law). Therefore the question is not whether Ambrose expected Cardenas to file suit against him, but whether the facts that he did know could create the expectation in a reasonable attorney that a claim might be forthcoming. A deadline to serve the police officer existed. Ambrose missed it, and a court dismissed the complaint citing that failure. This alone is sufficient to support a finding that Ambrose was aware of facts that provided a basis to believe that a malpractice claim against him was likely. *See Liberty Ins. Underwriters, Inc. v. Resurrection Health Care*, No. 1-11-2096, 2012 WL 6962867 at *7 (Ill. App. Sep. 27 2012) (knowledge of missed filing deadline provided reasonable basis to believe attorney breached professional duty) (unpublished). A federal district court issued an opinion stating that Ambrose "had only himself to blame" for the dismissal of his client's lawsuit. If that alone were not enough, the district court once again in its order on the motion to amend the judgment, and the appellate court in its opinion affirming the district court placed responsibility for the dismissal squarely on Ambrose. Any reasonable attorney would expect that such scathing opinions could be expected to be the basis of a malpractice claim. Each of these events occurred prior to the inception date of the policy, and Cardenas does not dispute that Ambrose was aware of all of them. To the extent that Ambrose subjectively believed that a malpractice suit was unlikely, the objective nature of the Court's inquiry renders that belief irrelevant. In short, the application of the Prior Knowledge Exclusion to the undisputed facts of this case is clear and free from doubt.

Twin City owed no duty to defend because the application of the Prior Knowledge Exclusion unambiguously removed Ambrose's claim from coverage, and therefore could not have breached that duty. Thus, the Court need not address Cardenas's arguments based on estoppel; estoppel only applies if the insurer has breached the duty to defend. *See, e.g.*, *Amer.*

11

*Safety Cas. Ins. Co. v. City of Waukegan*, 978 F.3d 475, 485 (7th Cir. 2012) (citing *Employers Ins. of Wausau v. Ehlco Liquidating Trust*, 708 N.E.2d 1122 (Ill. 1999)). Because Twin City owed Ambrose no duty to defend, it necessarily owed no duty to indemnify. *See Amerisure Mut. Ins. Co. v. Microplastics, Inc.*, 622 F.3d 806, 810 (7th Cir. 2010) (the duty to defend is broader than the duty to indemnify) (citing *Amer. Family Mut. Ins. Co. v. W.H. McNaughton Builders, Inc.*, 843 N.E.2d 492, 497 (Ill. App. 2006)). There is no need to consider the parties' dispute as to the validity of the settlement agreement because Ambrose had no interest in the Twin City policy to assign to Cardenas.

B.  **The Settlement Agreement**

While the analysis above is sufficient to support summary judgment in Twin City's favor, the Court notes that it is unlikely that Cardenas would be able to collect the full settlement ($750,000) from Twin City even if the policy potentially covered Ambrose's claim. The Supreme Court of Illinois has expressed reluctance to enforce settlement agreements that assign the rights of an insured under an insurance policy and provide that the assignee may only enforce the agreement against the insurer. *See Guillen ex rel. Guillen v. Potomac Ins. Co. of Ill.*, 785 N.E.2d 1, 14 (Ill. 2003) ("neither party to the settlement agreement is motivated to seriously negotiate over issues of damages and liability because the end goal is to structure the deal so that the carrier, a nonparty to the agreement, pays") (alteration and citation omitted). In order to lessen "the risk of collusion and fraud," Illinois law requires that the party seeking to enforce the agreement must demonstrate both that the conduct of the insured in reaching the agreement "conformed to the standard of a prudent *uninsured*" and that the dollar amount of the settlement is what "a reasonably prudent person in the position of the [insured] would have settled for on

the merits of plaintiff's claim." *Id.* (citation omitted) (alteration in original) (emphasis in original). Cardenas has not alleged, let alone established, facts sufficient to meet this standard.

In her opening memorandum in support of her motion for summary judgment, Cardenas raised no argument in support of the fact that the settlement agreement was enforceable. Cardenas addressed these issues for the first time in her reply brief, and even then stated only the conclusion that the settlement agreement is valid and enforceable. (Dkt. No. 41 at 14). Because Cardenas did not address these issues in her opening brief, she cannot do so for the first time in her reply. *See United States v. Wescott*, 576 F.3d 347, 354 (7th Cir. 2009) ("Arguments raised for the first time in a reply brief are waived.").

Even if Cardenas had not waived these arguments, she has failed to establish facts that would render the agreement enforceable. While paragraphs 18-22 of Cardenas's 56.1 Statement state facts that seem to set up an argument on the enforceability of the settlement agreement, Cardenas points to no evidence, save for the settlement agreement itself, in support of those conclusions. Only later, in her response to Twin City's motion to stay ruling on money judgment (Dkt. No. 39), did Cardenas point to any evidence, namely the affidavit of Bradley Cosgrove, in support of the agreement's enforceability. The affidavit falls well short of establishing, or even stating, facts necessary for this Court to find that the agreement is enforceable. In support of the validity of the agreement, the affidavit states only that the "settlement agreement was made as an arm's length transaction considering all of the elements of damages and the additional costs of defense and litigation." (Dkt. No. 39 ex. A). Moreover, the Court would be within its discretion not to consider this evidence at all, as Cardenas failed to cite it in any of her materials in support

13

of her motion for summary judgment.[2] *See* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials[.]"). This single conclusory statement does not establish that Ambrose's conduct in reaching the settlement conformed to the conduct of a prudent uninsured.

Even if Cosgrove's affidavit proved that the settlement process was reasonable, Cardenas has submitted no evidence demonstrating that $750,000 is what "a reasonably prudent person in the position of the [insured] would have settled for on the merits of plaintiff's claim." *Guillen*, 785 N.E.2d at 14. To determine whether the settlement agreement meets this standard, the Court must consider "the totality of the facts bearing on the liability and damage aspects of plaintiff's claim, as well as the risks of going to trial." *Id.* (internal quotation marks omitted). Cardenas bears the burden of proof on this issue. *Id*. The Court notes again that Cardenas did not address the reasonableness of the amount of the settlement agreement until she did so in her response to Twin City's motion to stay ruling on money judgment (Dkt. No. 39). The Court has examined the record closely to determine what might have motivated such a large settlement, but has been unable to find justification. The record does not establish whether Cardenas suffered injury when Chicago Police entered her home. In a request for admission during the litigation of the malpractice suit, Ambrose noted that the scope and source Cardenas's physical "injuries have not been confirmed." (Dkt. No. 30-2 at 76). The Court is not aware of any subsequent confirmation of her injuries. With respect to property damage, Cardenas, in her own words, "agrees it was minimal." (Dkt. No. 39 at 9). The Court is doubtful that a reasonably prudent attorney would settle the underlying suit for three quarters of a million dollars of his or her own money with no evidence of personal injury or property damage.

---

[2] The reason that Cardenas did not cite the affidavit in her materials in support of summary judgment is simple: Cosgrove did not provide the affidavit until May 12, over a month after Cardenas filed her motion for summary judgment on April 1.

Thus, even if the claim did not fit squarely into the Prior Knowledge Exception, the Court would not grant summary judgment in favor of Cardenas.

**CONCLUSION**

For the reasons stated herein, Twin City's motion for summary judgment is granted, and Cardenas's motion for summary judgment is denied. Because the Court grants Cardenas's motion for summary judgment, Twin City's motion to stay ruling on money judgment is dismissed as moot.

_____

Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: September 19, 2014